1. Under the evidence, there was no abuse of discretion on the part of the lower court in revoking its leave to the probationer to serve the remainder of his "sentence outside the confines of the jail, public-works camp, or other places of detention." "Where, after due examination, the court revokes its leave to the probationer to serve the remainder of his sentence outside the confines of the chain-gang, jail, or other place of detention, this court will not interfere unless a manifest abuse of discretion on the part of the lower court appears." Olsen v. State, 21 Ga. App. 795
(95 S.E. 269).
2. The State's contention that the order [judgment] passed by the court, revoking the leave to the probationer to serve the remainder of his sentence outside the confines of the jail, public-works camp, or other places of detention was not such a final judgment as could be the subject of review on direct bill of exceptions, was decided adversely to the State in State v. Thompson, 175 Ga. 189, 193 (165 S.E. 34), and Williams v. State, 162 Ga. 327 (133 S.E. 843).
Judgment affirmed. Broyles, C. J., and Gardner, J.,concur.
 DECIDED NOVEMBER 17, 1944.
 STATEMENT OF FACTS BY MacINTYRE, J.
On February 8, 1944, in the superior court of Pike County, W. T. Foster pleaded guilty to the offense of possessing liquor, a misdemeanor. The court imposed the following sentence: "The defendant having entered a plea of guilty for possessing liquor is this *Page 752 
day sentenced to pay a fine of $1000 at any time before the expiration of this sentence, and be put to work on the public works of Pike County, or otherwise as the proper authorities may direct, for a period of 12 months, 6 months in jail and thereafter be imprisoned in the common jail of said court, for a period of 6 months. Said sentence to be computed from Feb. 8th, 1944. However, it is hereby ordered that said defendant, upon payment of said fine, but not before payment of same, is herewith given leave to serve the aforesaid sentence outside the confines of the jail, public-works camp, or other place of detention, as the case may be, provided that the aforesaid defendant shall indulge in no unlawful, disorderly, dishonorable, injurious, or vicious habits or conduct; shall avoid places or persons of disreputable or harmful character; shall report to the probation officer as he may direct; shall not leave the jurisdiction of the court without permission; and shall observe such other conditions as are specified below, or as may at any time be required by the court, the judge thereof, or the probation officer. For any violations of any of the conditions, provisions, or requirement of this sentence, the judge of said court, in term or in vacation, with or without notice to the defendant, may revoke the leave for the defendant to serve said sentence on probation as aforesaid." The defendant paid the fine imposed by the court, and was released from custody. Thereafter, on March 24, 1944, the solicitor-general filed a petition praying that the probation sentence of W. T. Foster "be revoked and the defendant required to serve his sentence on the public works in Pike County, or as otherwise directed by the lawful authorities." The petition for revocation was based upon the following grounds: "1. That the defendant, W. T. Foster, pleaded guilty to an accusation in Pike superior court on the charge of illegally possessing liquor, and on February 8th, 1944, was sentenced by the court to 12 months on the public-works camp and 6 months in jail, and was permitted to serve said sentence on probation subject to the following conditions, to wit: `Defendant . . is herewith given leave to serve the aforesaid sentence outside the confines of the jail, public-works camp, or other place of detention, as the case may be, provided that the aforesaid defendant shall indulge in no unlawful, dishonorable, injurious, or vicious habits or conduct; shall avoid places or persons of disreputable character; . . For any violations of any *Page 753 
of the conditions, provisions, or requirements of this sentence, the judge of said court, in term or vacation, with or without notice to the defendant, may revoke the leave for the defendant to serve said sentence on probation as aforesaid.' 2. That on the 20th day of February, 1944, the said defendant violated the terms and conditions of said probation sentence, by then and there selling beer at his place of business in said county, same known as `Tom's Place,' and said transactions being then and there made on Sunday in violation of the law." The evidence adduced upon the hearing in substance was as follows: That the defendant was not in his place of business on February 20, 1944 [the day of the alleged violation], but had left his stepson, Fred Golson, in charge of the business on that occasion during his absence. Stevens, a witness for the State, testified as follows: "I had an occasion to go down in Pike County, on a Sunday, February 20, this year, with Claude Mask, Edgar Mask, Merril Mask, Billie Adams, and Billie Jones. We all went in my car. We first went to Griffin to carry a soldier boy to catch a bus. We then headed south down the Zebulon highway and west about five miles to Tom Foster's place. . . When we got to Tom Foster's place, Billie Adams and Merril Mask got out of the car. As to what they bought there at Tom's place, they came out to the car with ten bottles of beer and a quart of wine. . . I do not remember just which of the boys actually had the beer when they came out to the car, but he had it in his arm and set it in the back of the car, down in the foot of the car. . . We stayed there about two or three minutes longer at the time he brought the beer out to the car and then we cranked up." T. E. Mask, another witness for the State, testified in substance the same thing as did Stevens. Fred Golson testified as follows: "Two soldiers came in the store that night. They did not buy anything, but they came in the store and asked me if I had a bottle opener, and I told them I did not have one. . . I did not sell anybody any beer that night. I saw them with one bottle of beer. They brought it in the store and tried to open it and I would not let them. . . When they brought the bottle in the store and tried to open it, that was after I had told them, or after they had asked me to let them have a bottle opener. I refused to let them have one. . . He was trying to open the bottle on the cold-drink box. . . I told him that I rather he *Page 754 
would not open it in there, that it was against the law to sell it on Sunday, and if somebody saw him with it, they would think he bought it there. . . They were not sold any beer by anybody at that place that night. Tom Foster was not there that afternoon." The defendant made the following statement: "All I want to say is that I was not there. I left my stepson in charge and told him not to sell any beer or anything. I was supposed to be back about dark or sundown but I didn't get back until around 10:30 or 11 o'clock, and the store was closed and I went to bed." The court, after hearing the evidence, issued an order revoking the sentence as imposed. The defendant excepted and assigned error on this order "upon the ground that it was contrary to law and without evidence to support it."